UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

CONTRACTUAL OBLIGATION            :
PRODUCTIONS, LLC,
                                  :
            Plaintiff,                  04 Civ. 2867 (BSJ)(HBP)
                                  :
    -against-
                                  :     OPINION
AMC NETWORKS, INC., et al.,              AND ORDER
                                  :
            Defendants.
                                  :
----------------------------------X


            PITMAN, United States Magistrate Judge:


I.  Introduction


            Plaintiff commenced this action against defendants

Cablevision Systems Corporation ("Cablevision"), Rainbow Media

Holdings, Inc. ("Rainbow") and others alleging copyright and

trademark infringement and various violations of California state

law, including unfair business practices.  By Order dated March

29, 2007 (Docket Item 46), the Honorable Barbara S. Jones, United

States District Judge, granted summary judgment in favor of

defendants on, inter alia, plaintiff's claims of copyright

infringement, trademark infringement, and unfair competition.

            By notice of motion dated April 13, 2007 (Docket Item

48), Cablevision and Rainbow move pursuant to Section 101 of the

Copyright Act, 17 U.S.C. § 505, and Section 35(a) of the Lanham

Act, 15 U.S.C. § 1117(a), for an order directing plaintiff to pay

Cablevision and Rainbow the attorneys' fees and costs incurred in defending against plaintiff's copyright infringement, trademark infringement, and unfair competition claims.

## II.  Background

The facts giving rise to plaintiff's claims and the procedural history of this action are set forth in detail in Judge Jones' March 29, 2007 Order; familiarity with this Order is assumed.  I shall set forth only those facts that are pertinent to the disposition of Cablevision and Rainbow's request for attorneys' fees.

### A.  Facts

In 2002 plaintiff began production of a television series for American Movie Classics Company LLC ("AMCC").  In February, 2003, plaintiff and AMCC executed a Certificate and Assignment ("Assignment") providing that plaintiff would create the series, then entitled, "What If," as a "work-made-for-hire." The Assignment provides, in pertinent part:

> [A]ll literary, artistic and other material of
> whatever kind or nature created, developed, furnished,
> submitted and/or written by Artists and all of the
> results and proceeds of Artist' services (the "Mate-
> rial") in connection with the television project cur-
> rently entitled "WHAT IF" (the "Project"), were, or
> will be, written, created and/or rendered at AMCC's
> request during the course of Artists' employment with
> or engagement by AMCC and constitute or will constitute
> a "work-made-for-hire" as defined in the United States

> Copyright Act of 1976, as amended; the Material was
> specifically ordered or commissioned by AMCC for possi-
> ble use in the Project; AMCC is and shall be the author
> of said "work-made-for-hire" and the owner of all
> rights in and to the Material throughout the universe,
> in perpetuity and in all languages, for all now known
> or hereafter existing uses, media, and forms, includ-
> ing, without limitation the copyrights herein and
> thereto (including all extension and renewals thereof).

(Assignment, annexed as Exhibit 1 to the Declaration of Brian R.
Socolow, executed April 13, 2007 ("Socolow Decl.")).  Apparently
problems developed between plaintiff and AMCC during the develop-
ment of the first season of "What If," which had been renamed
"The Wrong Coast,"[1] and none of the episodes developed for that
season aired.  AMCC subsequently developed a second season of
"The Wrong Coast" independently of plaintiff, using the services
of a Canadian production company (March 29, 2007 Order at 3-4).

B.  Procedural History

On November 19, 2003, plaintiff initiated this action
in the United States District Court for the Central District of
California (Civil Cover Sheet, annexed as Exhibit 3 to Socolow
Decl.).  Plaintiff asserted seven claims:  (1) copyright in-
fringement, (2) trademark infringement, (3) unfair business
practices in violation of California Business and Professions
Code §§ 17200 et seq., (4) breach of contract, quasi-contract,

---

[1]The parties do not dispute that "What If" and "The Wrong
Coast" are different names for the same project.

quantum meruit and promissory estoppel, (5) fraud, (6) intentional interference with business relations, and (7) slander (Plaintiff's Verified Complaint ("Compl."), annexed as Exhibit 2 to Socolow Decl., at ¶¶ 111-57).

Plaintiff's copyright claim alleged that "[d]efendants' intentionally infringed on plaintiff's copyright by promoting and publishing plaintiff's material without authorization, without just compensation and without appropriate attribution" (Compl. ¶ 112). Plaintiff's trademark infringement claim alleged that Cablevision and Rainbow violated the Lanham Act by obtaining illegal subsidies from the Canadian government in anticipation of publishing "The Wrong Coast" on national cable television, incorrectly designating it as a Canadian series, and not giving plaintiff any credit (Compl. at ¶¶ 124-31). Plaintiff also alleged that Cablevision and Rainbow violated Section 17200 of California's Business and Professions Code by, inter alia, violating the Lanham Act (Compl. at ¶¶ 140-48).

Plaintiff moved for a preliminary injunction and Rainbow filed a motion to dismiss for improper venue. The Honorable Percy Anderson, United States District Judge for the Central District of California, denied plaintiff's motion for preliminary injunctive relief, finding that plaintiff was unlikely to succeed on the merits of either its copyright or trademark infringement claims. Judge Anderson concluded that,

based on the Assignment, plaintiff's contribution to "The Wrong Coast" "was done as a 'work-made-for-hire' and that AMCC is the author and owner" of that work (see Order Denying Motion for a Preliminary Injunction and Granting Motion to Transfer, dated April 5, 2004 ("Anderson Order"), at 6-7, annexed as Exhibit 4 to Socolow Decl.).  Judge Anderson also found that pursuant to the United States Supreme Court's holding in Dastar Corp. v. Twenti- eth Century Fox Film Corp., 539 U.S. 23 (2003), plaintiff's trademark claim was not cognizable under the Lanham Act (Anderson Order at 6-7).  Judge Anderson also ordered that the action be transferred to the Southern District of New York rather than dismissed for improper venue (Anderson Order at 7-9).

By Orders dated February 8, 2005 and May 9, 2005, I dismissed plaintiff's initial complaint with respect to AMC Network, Inc., AMCC, Inc., American Movie Classics Holding Corporation, Inc., Blueprint Entertainment (USA), Inc., Curious Pictures, Cuppa Coffee and Moving Parts Productions for failure to serve the summons and complaint on those entities properly (Docket Item 11; Docket Item 12).

On June 14, 2005 plaintiff moved for leave to amend its complaint to, inter alia, assert claims of copyright infringement and trademark infringement against certain additional defendants. On March 31, 2006 I denied, with prejudice, plaintiff's request to add new defendants because (1) under the clear, unambiguous

language of the Assignment, plaintiff was not the owner of the work when the alleged infringement occurred and did not, therefore, have standing to bring a copyright claim, and (2) plaintiff's trademark infringement claim was foreclosed by the Supreme Court's ruling in Dastar that the Lanham Act does not apply to claims arising out of a failure to attribute or credit the origin of creative work (Memorandum Opinion and Order, Docket Item 36, at 8-12, 20-21, citing Dastar Corp. v. Twentieth Century Fox Film Corp., supra, 539 U.S. at 30-37).

On March 29, 2007, Judge Jones granted summary judgment in favor of Cablevision and Rainbow on all remaining claims, holding that plaintiff lacked standing to bring its copyright claim because the Assignment "rendered all of Plaintiff's services 'work-made-for-hire,' and designated AMCC as the 'author' and owner of the work and proceeds therefrom" (March 29, 2007 Order at 7). Judge Jones also found that plaintiff's Lanham Act claim was foreclosed by Dastar, as was plaintiff's claim of unfair business practices, the success of which relied on plaintiff's Lanham Act claim (March 29, 2007 Order at 10-11).

A number of discovery disputes arose through the course of plaintiff's action. On December 2, 2004 I granted Cablevision and Rainbow's request to quash plaintiff's subpoenas to two non-parties, which plaintiff did not serve on Cablevision and Rainbow until the day before the discovery deadline (Docket Item 8). On

March 9, 2005 Cablevision and Rainbow requested an Order compelling plaintiff to produce several documents that Cablevision and Rainbow had repeatedly requested (Defendants Second Request for Production of Documents to Plaintiff, annexed as Exhibit 12 to Socolow Decl.). On June 24, 2005, I granted that request (Docket Item 16). As a result of plaintiff's failure to comply with the June 24, 2005 Order, Cablevision and Rainbow requested attorneys' fees, sanctions and an Order of Preclusion regarding (1) plaintiff's copyright claim based on the alleged substantial similarity between its work and the Canadian production of "The Wrong Coast;" (2) plaintiff's claims for damage to its reputation and (3) plaintiff's claim for damages concerning payments that plaintiff had made (Letter from Eric S. Manne to the Court, dated July 22, 2005, annexed as Exhibit 14 to Socolow Decl.). After hearing oral argument on the matter on November 7, 2005, I awarded defendants $3,163.78 in attorneys' fees and costs, pursuant to Fed.R.Civ.P. 37(a), concerning their March 9, 2005 motion to compel, and I denied, without prejudice, defendants requests for fees with respect to the July 22, 2005 motion (Docket Item 29). I also denied the application for an Order of preclusion.

Cablevision and Rainbow's current motion asserts that an award of attorney's fees is appropriate because plaintiff's copyright infringement claim was objectively unreasonable and

plaintiff's trademark infringement claim was pursued in bad
faith.

III.  Analysis

    A.  Plaintiff's Copyright
        Infringement Claim

        Title 17, United States Code, Section 505 provides:

> In any civil action under this title, the court in
> its discretion may allow the recovery of full costs by
> or against any party other than the United States or an
> officer thereof.  Except as otherwise provided by this
> title, the court may also award a reasonable attorney's
> fee to the prevailing party as part of the costs.

Whether attorney's fees should be awarded to a prevailing party

in a copyright action is committed to the Court's discretion; a

prevailing party is not entitled to recover attorney's fees as a

matter of course.  Fogerty v. Fantasy, Inc., 510 U.S. 517, 533

(1994).  The Supreme Court has identified the following non-

exclusive list of factors as being relevant to the resolution of

an application for attorney's fees in a copyright action:

"frivolousness, motivation, objective unreasonableness (both in

the factual and in the legal components of the case) and the need

in particular circumstances to advance considerations of compen-

sation and deterrence."  Fogerty v. Fantasy, Inc., supra, 510

U.S. at 534, n.19.  "However, 'such factors may be used only "so

long as [they] are faithful to the purposes of the Copyright

Act."'  The primary objective of the Copyright Act is to 'encour-

age the production of original literary, artistic, and musical expression for the good of the public.'"  Arclightz & Films Pvt. Ltd. v. Video Palace Inc., 303 F. Supp.2d 356, 363 (S.D.N.Y. 2003), quoting Matthew Bender & Co. v. West Publ'g Co., 240 F.3d 116, 120-21 (2d Cir. 2001) and Fogerty v. Fantasy, Inc., supra, 510 U.S. at 524.

Recognizing that on occasion defendants in lawsuits may hold the copyrights that are in dispute, "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim . . . ."  Fogerty v. Fantasy, Inc., supra, 510 U.S. at 527.  Thus, "[p]revailing plaintiffs and prevailing defendants are to be treated alike" with respect to claims for attorneys' fees.  Fogerty v. Fantasy, Inc., supra, 510 U.S. at 534.

The Second Circuit has held that "objective reasonable-ness is a factor that should be given substantial weight in determining whether an award of attorneys' fees is warranted."  Matthew Bender & Co. v. West Publ'g Co., supra, 240 F.3d at 123.  The court may, therefore, award a prevailing defendant attorneys' fees if it was objectively unreasonable for plaintiff to bring a copyright action.  See Pannonia Farms, Inc. v. USA Cable, 03 Civ. 7841 (NRB), 2004 WL 1276842 at *7 (S.D.N.Y. June 8, 2004).  A plaintiff's claim of copyright infringement is objectively unrea-

sonable when the claim is "clearly without merit or otherwise patently devoid of [a] legal or factual basis." Penguin Books U.S.A. v. New Christian Church of Full Endeavor, Ltd., 96 Civ. 4126 (RWS), 2004 WL 728878 at *3 (S.D.N.Y. Apr. 6, 2004).

Cablevision and Rainbow argue that plaintiff's copyright claim was objectively unreasonable because the clear, unambiguous "work-made-for-hire" provision of the Assignment was fatal to any copyright claim (Deft. Mem. at 8-9). Moreover, plaintiff continued to prosecute its frivolous claim despite the conclusions of Judge Anderson and myself that it did not have standing to assert a claim under the Copyright Act (Anderson Order at 6-7; March 31, 2006 Order, Docket Item 36, at 8-12). Cablevision and Rainbow also contend that plaintiff's failure to comply with discovery obligations, which resulted in Cablevision and Rainbow's successful litigation of a motion to compel, constitutes further evidence of the unreasonableness of plaintiff's conduct in this litigation (See Nov. 16, 2005 Order, Docket Item 29). Thus, according to Cablevision and Rainbow, plaintiff not only initiated a baseless suit, but also needlessly increased the costs of defending the action (Deft. Mem. at 9). I agree with Cablevision and Rainbow that plaintiff's assertion of a copyright claim and its continued prosecution thereof was objectively unreasonable.

In finding that plaintiff's copyright claim was objectively unreasonable, I look first to the text of Judge Jones' Order granting summary judgment.  See Brown v. Perdue, 04 Civ. 7417 (GBD), 2006 WL 2679936 at *5 (S.D.N.Y. Sept. 15, 2006). Judge Jones found that:

> [a]s a threshold matter, Plaintiff lacks standing to bring this claim because it assigned to AMCC whatever copyright interest Plaintiff might have had in the Project.  See 17 U.S.C. § 210(d)(1) ("The ownership of a copyright may be transferred in whole or in part by any means of conveyance . . . ."); Skor-Mor Prods., Inc. v. Sears, Roebuck and Co., No. 81 Civ. 1286 (CSH), 1982 WL 1264, at *3 (S.D.N.Y. May. 12, 1982) ("[A]n assignor of a copyright has no standing to sue for acts of infringement which occurred after execution of the assignment."); accord Walker v. University Books, Inc., 602 F.2d 859, 862 (9th Cir. 1979).
>
> Specifically, the Assignment rendered all of Plaintiff's services "work-made-for-hire," and designated AMCC as the "author" and owner of the work and proceeds therefrom.  See Assignment at 1; see also 17 U.S.C. § 201(b) ("In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author . . . [and] owns all of the rights comprised in the copyright."); Playboy Enterprises, Inc. v. Dumas, 53 F.3d 549, 558 (2d Cir. 1995) (holding that Copyright Act confers work-for-hire status where "the parties expressly agree" to it in writing).
>
> Because Plaintiff has no copyright interest to protect, it lacks standing to pursue its infringement claim against Defendants.  See, e.g., Shaw v. Rizzoli Int'l Pub., Inc., No. 96 Civ. 4259 (JGK), 1999 WL 160084, at *6 (S.D.N.Y. Mar. 23, 1999) (granting summary judgment where plaintiff, who was not the "legal or beneficial owner" of the copyrights, lacked standing to bring copyright claim); Skor-Mor Prods., 1982 WL 1264, at *3 (dismissing copyright claim for lack of standing).

The Court rejects Plaintiff's attempts to circumvent the Assignment. Specifically, Plaintiff claims that it could not have assigned its copyright interest because, at the time the Assignment was executed, the Project was merely an idea that was not fixed in any protectable form. See 17 U.S.C. § 102(a) ("Copyright protection" extends to "original works of authorship fixed in any tangible medium of expression, now known or later developed . . . ."). However, because the Assignment expressly extended to works "that are, or will be, written, created, or developed" by Plaintiff, any copyright interest that Plaintiff did not have at the time of the Assignment's execution was necessarily assigned to AMCC at the time any such future copyright interest arose. (Assignment at 1); see also NASCAR v. Scharle, 356 F. Supp. 2d 515, 524 (E.D. Pa. 2005) (finding that defendant transferred copyright of works of art to be created pursuant to contract); see also Mellencamp v. Riva Music, Ltd., 698 F. Supp. 1154, 1155 (S.D.N.Y. 1984) (noting assignment of all compositions plaintiff authored during term of agreement).

Nor is there any merit to Plaintiff's assertion that the Project's renaming -- from "What If" to "The Wrong Coast" -- removes it from the Assignment's scope. As just explained, the Assignment extends to future works. Moreover, the Assignment states that the work at issue was "currently entitled "What If" (Assignment at 1 (emphasis added)) [sic], and thus contemplated a title change.

Accordingly, the Court grants Defendants summary judgment on Plaintiff's copyright claim.

(March 29, 2007 Order at 6-9).

Plaintiff argues that its copyright claim was reasonable because the Assignment was invalid, and that it was the true owner of the copyright at issue. Plaintiff asserts that the Assignment was invalid because "The Wrong Coast" was not in a fixed form when the Assignment was made, and "[i]t is a fundamental copyright principal [sic] that you cannot assign a copyright

until the material is in a fixed form" (Pl. Opp. at 5). Plain-
tiff cites no authority that directly supports this purportedly
fundamental principle. Rather, plaintiff cites only Section 101
of the 1976 Copyright Act, which provides

> (a) Copyright protection subsists, in accordance
> with this title, in **original works of authorship fixed
> in any tangible medium of expression**, now known or
> later developed, from which they can be perceived,
> reproduced, or otherwise communicated, either directly
> or with the aid of a machine or device. . . .

> (b) **In no case does copyright protection for an
> original work of authorship extend to any idea**, proce-
> dure, process, system, method of operation, concept,
> principle, or discovery, regardless of the form in
> which it is described, explained, illustrated, or em-
> bodied in such work.

(Pl. Opp., quoting 17 U.S.C. § 102 (emphasis added by plain-
tiff)). Plaintiff also cites Baker v. Selden, 101 U.S. 99
(1879), for the proposition that a copyright cannot protect an
idea, but only the expression of an idea (Pl. Opp. at 5).

Plaintiff's theory is that because there was only an
idea for a television show when plaintiff and AMCC executed the
Assignment, the Assignment was "meaningless," and plaintiff, not
AMCC, owned the copyright to "The Wrong Coast" (Pl. Opp. at 6).
Plaintiff appears to be arguing that Assignments for future work,
or work that has not yet been created, are invalid under the
Copyright Act. Plaintiff's theory has no merit.

First, plaintiff's theory conflicts with the Copyright
Act itself, which defines a "work-made-for-hire" as "a work

13

specially ordered or commissioned for use as a contribution to a
collective work. . ."  17 U.S.C. § 101.  The Act states that when
a work is produced as a work-made-for-hire, the "person for whom
the work was prepared is considered the author . . . [and] owns
all of the rights comprised in the copyright."  17 U.S.C.
§ 201(b).  <u>See</u> <u>also</u> 1 Melville B. Nimmer & David Nimmer, <u>Nimmer</u>
<u>on Copyright</u> § 5.03 (2008) (A work is produced on special order
or commission where one party "is requested by another to prepare
a copyrightable work. . . ."); <u>Playboy Enters., Inc. v. Dumas</u>, 53
F.3d 549, 559 (2d Cir. 1995) (The purpose of the "work-for-hire
provisions of the 1976 Act was to ensure predictability through
advance planning," thus work-made-for-hire agreements, designat-
ing the hiring party as the author, must be made <u>before</u> the
creation of the work (internal quotation marks omitted)).  Hence,
the Copyright Act clearly allows for enforceable agreements
assigning the rights of works that are not yet created.

Second, assignments of copyrights for work yet to be
created are commonplace in the entertainment industry and have
repeatedly been held enforceable in federal courts.  <u>See</u> <u>e</u>.<u>g</u>.
<u>Mellencamp v. Riva Music Ltd.</u>, 698 F. Supp. 1154, 1155 (S.D.N.Y.
1988); <u>National Ass'n for Stock Car Auto Racing, Inc. v. Scharle</u>,
356 F. Supp.2d 515, 524 (E.D. Pa. 2005).

Plaintiff also claims that "[t]here is no evidence that
the plaintiff created <u>The Wrong Coast</u> as a work for hire" because

the work entitled in the Assignment was "What If."  It is of no moment that the work described in the Assignment was entitled "What If" and not "The Wrong Coast."  There is no dispute that "What If" was the same project as "The Wrong Coast" (March 29 Order at 2).  As Judge Jones' opinion noted, the Assignment refers to the work at issue as "the television project <u>currently</u> entitled 'WHAT IF'" (Assignment at 1)(emphasis added).  Thus, the Assignment clearly contemplated the possibility of a name change.  Thus, plaintiff's argument that the Assignment does not apply to "The Wrong Coast" is also entirely without merit.

Plaintiff next claims that under <u>Cmty. for Creative Non-Violence v. Reid</u>, 490 U.S. 730 (1989), the "The Wrong Coast" should not be considered a work-for-hire.  In <u>Cmty. for Creative Non-Violence v. Reid</u>, the Supreme Court ruled that an artist's sculpture was not a work-for-hire and that the artist, therefore, owned the copyright to the sculpture.  490 U.S. at 752-53.  However, that case is distinguishable.

Unlike the case at bar, the parties in <u>Cmty. for Creative Non-Violence v. Reid</u> "did not sign a written agreement" 490 U.S. at 734.  Furthermore, the work at issue in that case, a sculpture, was not among the categories of works that could constitute a work-made-for-hire within the meaning of Section 101

15

of the Copyright Act.[2]  <u>Cmty. for Creative Non-Violence v. Reid</u>,
<u>supra</u>, 490 U.S. at 738 <u>quoting</u> 17 U.S.C. § 101(2).  Because there
was no written agreement and because the work at issue was a
sculpture, Section 101(2) of the Copyright Act could not apply.
Since plaintiff and AMCC had a written agreement expressly pro-
viding that the project then entitled "What If" was to be a
"work-for-hire" and since "What If," an audiovisual work, is
within the categories enumerated in Section 101(2) of the Copy-
right Act, plaintiff's reliance on <u>Cmty. for Creative Non-Vio-
lence v. Reid</u> is misplaced.

      Since all of plaintiff's legal theories concerning its
standing to pursue a copyright infringement claim are objectively
unreasonable, Cablevision and Rainbow are entitled to have plain-
tiff pay their reasonable fees and costs in defending against
that claim.

---

[2]The 1976 Act defines a "work made for hire" as

      (1) a work prepared by an employee within the
scope of his or her employment; or

      (2) a work specially ordered or commissioned for
use as a contribution to a collective work, as a part
of a motion picture or other audiovisual work, as a
translation, as a supplementary work, as a compilation,
as an instructional text, as a test, as answer material
for a test, or as an atlas, <u>if the parties expressly
agree in a written instrument signed by them that the
work shall be considered a work made for hire</u>.

17 U.S.C. § 101 (emphasis added).

B.  <u>Plaintiff's Lanham Act Claim</u>

Cablevision and Rainbow next argue that plaintiff's litigation of its trademark infringement claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1025(a), was unreasonable and "replete with fraud and bad faith" such that defendants are entitled to an award of fees (Deft. Mem. at 11).

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).  The Second Circuit has interpreted "exceptional cases" to include instances where there is evidence "of fraud or bad faith."  <u>Twin Peaks Productions, Inc. v. Publications Intern., Ltd.</u>, 996 F.2d 1366, 1383 (2d Cir. 1993); <u>accord Patsy's Brand, Inc. v. I.O.B. Realty, Inc.</u>, 317 F.3d 209, 221 (2d Cir. 2003).  The standard for awarding fees to a prevailing defendant is the same as that for a prevailing plaintiff.  <u>Conopco, Inc. v. Campbell Soup Co.</u>, 95 F.3d 187, 194-95 (2d Cir. 1996); <u>accord New Sensor Corp. v. CE Distribution LLC</u>, 367 F. Supp.2d 283, 286-87 (E.D.N.Y. 2005).

A finding of bad faith is warranted when a plaintiff's trademark infringement claim is entirely without merit and was asserted for improper purposes such as harassment or delay.  <u>Juicy Couture, Inc. v. L'Oreal USA, Inc.</u>, 04 Civ. 7203 (DLC), 2006 WL 2591478 at *4 (S.D.N.Y. Sept. 11, 2006) <u>citing Baker v. Health Mgmt. Sys., Inc.</u>, 264 F.3d 144, 149 (2d Cir. 2001).  <u>See</u>

New Sensor Corp. v. CE Distribution LLC, supra, 367 F. Supp.2d at 288 (inferring bad faith and awarding fees where plaintiff "knew or should have known that its claims were not well grounded in fact" such that "one can only speculate about the motives which prompted its suit").

In this case there is no direct evidence that plaintiff pursued its trademark infringement claim in bad faith. Cablevision and Rainbow argue that there is, however, circumstantial evidence of plaintiff's bad faith. Specifically, Cablevision and Rainbow argue that because plaintiff's trademark infringement claim was clearly foreclosed by Dastar, plaintiff either proceeded with its claim knowing that it was without merit or failed to perform the minimal legal analysis required by Fed.R.Civ.P. 11 (Deft. Mem. at 12-13). According to Cablevision and Rainbow, plaintiff's continuance of its trademark claim after both Judge Anderson and I ruled that the claim was foreclosed by Dastar further evidences plaintiff's bad faith (Deft. Memo 12-13).

Defendants in a Lanham Act action are not entitled to attorney's fees merely because plaintiff's claim was meritless and unable to survive summary judgment. Elements/Hill Schwartz, Inc. v. Gloriosa Co., 01 Civ. 904 (DLC), 2002 WL 31133391 at *3 (S.D.N.Y. Sept. 26, 2002). However, pursuit of a legal theory that plaintiff either knew or should have known was untenable

implies bad faith warranting an award of fees under the Lanham Act.  <u>Nat'l Distillers Prods. Co. v. Refreshment Brands, Inc.</u>, 00 Civ. 8418 (NRB), 2002 WL 1766548 at *1-2 (S.D.N.Y. July 30, 2002) ("Where . . . the prevailing party is a defendant, the cases demonstrate that the plaintiff's pursuit of patently frivolous claims is circumstantial evidence of bad faith.").

Plaintiff brought its trademark infringement claim alleging violations of Section 43(a) of the Lanham Act, which prohibits a false designation of the origin of goods.  15 U.S.C. § 1125(a).[3]  In <u>Dastar Corp v. Twentieth Century Fox Film Corp.</u>, the Supreme Court held that Section 43(a) does not apply to

_____

[3]15 U.S.C. Section 1125(a) provides that

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

claims involving a failure to attribute or credit the origin of creative work. 539 U.S. at 30-37. Rather, the Court held that such claims are cognizable under the Copyright Act and not the Lanham Act. 539 U.S. at 33; see also Freeplay Music, Inc. v. Cox Radio, Inc., 409 F. Supp.2d 259, 263 (S.D.N.Y. 2005) ("The right to copy creative works, with or without attribution, is the domain of copyright, not of trademark or unfair competition. The failure to credit the true author of a copyrighted work is not a false designation of origin, but a violation of copyright."), citing Dastar Corp. v. Twentieth Century Fox Film Corp., supra, 539 U.S. at 33; Slice of Pie Prods., LLC v. Wayans Bros. Entm't, 392 F. Supp.2d 297, 313 (D. Conn. 2005) ("[T]he clear import of Dastar is that any protection for the misappropriation of [e.g., a television show's] content comes from the Copyright Act, not from the Lanham Act."); see also Smith v. New Line Cinema, 03 Civ. 5274 (DC), 2004 WL 2049232 at *4 (S.D.N.Y. Sept. 13, 2004) (dismissing, based on Dastar, a Lanham Act claim alleging failure to credit the true author of a screenplay); Carrol v. Kahn, 03 Civ. 0656, 2003 WL 22327299 at *5 (N.D.N.Y. Oct. 9, 2003) ("A Lanham Act claim based on Defendants' alleged failure to give Plaintiff proper credit as author and/or producer [of the film] . . . is foreclosed by Dastar.").

When Judge Anderson denied plaintiff's motion for a preliminary injunction, he unequivocally put plaintiff on notice

that, pursuant to Dastar, the protection plaintiff was claiming under the Lanham Act applied "'to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept or communications'" (Anderson Order at 6-7, quoting Dastar 539 U.S. at 37). From that point forward, plaintiff knew that it had no basis for its Lanham Act claim, and plaintiff should have withdrawn that claim from its action against defendants.

Plaintiff continues to argue that its trademark claim is distinguishable from that in Dastar because, unlike "The Wrong Coast," the work at issue in Dastar was in the public domain. Plaintiff has failed, however, to offer any meaningful explanation of why this fact distinguishes Dastar. Moreover, district court cases following Dastar have expressly rejected the argument that Dastar does not apply where, as here, the work in issue is copyrighted. See Antidote Int'l Films, Inc. v. Bloomsbury Pub., PLC, 467 F. Supp.2d 394, 398 (S.D.N.Y. 2006) ("Dastar holds that the fact that copyright law covers communicative products prevents these products from being accorded special treatment under the Lanham Act regardless of whether a viable copyright claim exists in a given case." (internal quotation marks omitted)); Slice of Pie Prods., LLC v. Wayans Bros. Entm't, supra, 392 F. Supp.2d at 313. Plaintiff has not cited a single instance where

a court has agreed with the argument that <u>Dastar</u> was inapplicable when the work in issue was copyrighted.

Furthermore, plaintiff's memorandum of law in opposition to Cablevision and Rainbow's motion for fees actually proves Cablevision and Rainbow's point. Plaintiff, quoting an unspecified edition of <u>McCarthy on Trademarks & Unfair Competition</u>, states "'[a]fter Dastar, to trigger Lanham Act § 43(a) claims, false claims of creation of the intellectual property content of a product must fit within the false advertising prong of § 43(a)(1)(B)'" (Plaintiff Opp. at 10).[4] Plaintiff then argues that its claims fall within the false advertising prong of the Lanham Act. However, as Judge Jones found:

> plaintiff's claims that Defendants engaged in false advertising by labeling "The Wrong Coast" a Canadian production . . . is merely a different iteration of Plaintiff's theory that it created and produced the program in the United States. Plaintiff, however, cannot circumvent the import of <u>Dastar</u> by recasting its creative origin claim . . . as a false advertising claim . . . . In any event, because Plaintiff has neither alleged nor presented any evidence that it is Defendants' competitor, Plaintiff lacks standing to

---

[4]The current edition of <u>McCarthy on Trademarks & Unfair Competition</u> reads <u>Dastar</u> to foreclose plaintiff's claim under the Lanham Act. 5 J. Thomas McCarthy, <u>McCarthy on Trademarks & Unfair Competition</u> § 27:77.1 (4th ed. 2007) (Under <u>Dastar</u>, "Lanham Act § 43(a)(1)(A)'s prohibition on false claims of origin cannot be extended to false claims of the creation of inventive or communicative works. Thus, 'reverse passing off' claims brought under Lanham Act § 43(a)(1)(A) cannot focus on allegedly false claims of authorship, invention or creation.")

> bring a false advertising claim against Defendants
> under 15 U.S.C. § 1125(a)(1)(B).

(March 29, 2007 Order at 11).

Plaintiff's failure to present facts that would establish plaintiff's standing to assert a false advertising claim is evidence that plaintiff did not pursue its trademark infringement claim in good faith.  See IMAF S.p.A. v. J.C. Penny Co., 26 U.S.P.Q.2d 1667, 1677 (S.D.N.Y. 1992) (The "absolute failure to make a sincere attempt validly to establish an essential element of a section 43(a) claim" evidences bad faith.).

Thus, I find that because plaintiff's Lanham Act claim was completely lacking in legal merit and that plaintiff had actual knowledge that its Lanham Act claims was baseless, this case does present exceptional circumstances warranting an award of attorneys' fees to defendants.

There is no evidence, however, that plaintiff was aware of Dastar or its relevance before it filed its complaint and motion for a preliminary injunction and, thus, no evidence from which it can be inferred that plaintiff acted in bad faith prior to Judge Anderson's decision.  Plaintiff is only liable, therefore, for the reasonable attorneys' fees incurred defending against plaintiff's Lanham Act claims after Judge Anderson's ruling.

Cablevision and Rainbow also request the attorneys' fees they incurred in defending against plaintiff's unfair compe-

tition claim pursuant to California Business and Professions Code
(Deft. Mem. at 14).

> The general rule is that "[t]he prevailing party
> in a multi-claim case which includes both Lanham Act
> and non-Lanham Act counts should be entitled to attor-
> ney fees only for work expended in prosecuting or de-
> fending the Lanham Act counts."  However, "[i]f the
> claims are so intermingled that the factual basis and
> the legal theories are essentially the same, the court
> may award all of the prevailing party's attorney fees,
> making no deduction for the Lanham Act counts."

New York State Soc. of Certified Public Accountants v. Eric Louis
Assocs., Inc., 79 F. Supp.2d 331, 353 (S.D.N.Y. 1999), quoting 5
J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition
§ 30:103 (4th ed. 1999).

"[C]laims under California Business and Professions
Code are substantially congruent to claims made under the Lanham
Act."  M2 Software, Inc. v. Mandalay Entm't, 421 F.3d 1073, 1089-
90 (9th Cir. 2005) (internal quotation marks omitted); RDF Media
Ltd. v. Fox Broad. Co., 372 F. Supp.2d 556, 565 (C.D. Cal. 2005).
Because plaintiff's claim under the California Business and
Professions Code was substantially similar to plaintiff's claim
under the Lanham Act, Cablevision and Rainbow are entitled to the
attorneys' fees incurred after April 6, 2004, in defending
against that claim as well.

C.  The Relative Financial
    Strength of the Parties

Plaintiff asserts that because of the financial dispar-
ities between the parties, the Court "should exercise its discre-
tion . . . and decline to award fees" (Pl. Opp. at 10).  The only
evidence plaintiff has submitted in support of its economic
hardship is the affidavit of plaintiff principal Charles Robert
Underwood, stating that plaintiff "has lost money in every year
since this case was brought" and that its "primary asset . . .
[is its] rights and entitlements in The Wrong Coast" (Affidavit
of Charles Robert Underwood, sworn to April 30, 2007, annexed as
an unnumbered exhibit to Pl. Opp., at ¶ 1).

Courts assessing attorney's fee applications in copy-
right actions may consider the relative financial strengths of
the parties in determining whether an award of fees is appropri-
ate.  Brown v. Perdue, supra, 2006 WL 2679936 at *6.  However,
plaintiff has not offered any documentation, such as income tax
filings or balance sheets, to support Underwood's assertion.
Since plaintiff's submissions do not establish plaintiff's in-
ability to pay an attorney's fee award, its claim of financial
hardship is insufficiently supported.  See Brown v. Perdue,
supra, 2006 WL 2679936 at *7.

D. Cablevision and Rainbow's
   Reasonable Attorneys' Fees

Cablevision and Rainbow have not submitted evidence in support of the amount of their claimed attorney's fees. Nor have Cablevision and Rainbow disclosed the hourly rates charged by their counsel. Rather, Cablevision and Rainbow have requested that I first make a determination concerning plaintiff's liability for fees and costs, and then allow Cablevision and Rainbow to submit documentation establishing the amount and reasonableness of those expenses (Deft. Mem. at 15-16).

IV. Conclusion

Accordingly, Cablevision and Rainbow's motion for an order directing plaintiff to pay their reasonable attorneys' fees and costs incurred in defending against plaintiff's copyright infringement, trademark infringement, and unfair competition claims is granted. Cablevision and Rainbow shall submit the proper documentation of those fees and costs within twenty (20) days of the date of this Memorandum Opinion and Order. Plaintiff shall submit its opposition twenty (20) days thereafter.

Dated: New York, New York
       March 25, 2008

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

26

Copies mailed to:

Joel D. Joseph, Esq.
Joseph & Associates
7272 Wisconsin Avenue
Suite 300
Bethesda, Maryland  20814

Joseph Q. Kaufman, Esq.
Venus Soltan, Esq.
Soltan and Associate
555 Anton Blvd.
Costa Mesa, California 92626

Michael Freed, Esq.
23-42 Corporal Kennedy Street
Bayside, New York 11360

Noah L. Shube, Esq.
Friedman & Shube
155 Spring Street
New York, New York 10012

Brian D. Socolow, Esq.
Eric S. Manne, Esq.
Loeb & Loeb, LLP
345 Park Avenue
New York, New York  10154-0037